Nancy S. **DEVINE**, Plaintiff,

v.

**AMERICAN BENEFIT CORPORATION**, et al., **Defendants**.

Civil Action No. 2:97–1157.

United States District Court, S.D. West Virginia, Charleston Division.

July 13, 1999.

Mark W. Kelley and Jon L. Brown, Payne, Loeb & Ray, Charleston, WV, for Nancy S. Devine.

Thomas V. Flaherty and Keith M. Kodosky, Flaherty, Sensabaugh & Bonasso, Charleston, WV, for ABC.

John J. Polak and Susan M. Murray, Rose & Atkinson, Charleston, WV, and R. Terrence Rodgers, Allen, Guthrie & McHugh, Charleston, WV, for Association.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are (1) Defendant American Benefit Corporation's (ABC) motion for attorney fees; and (2) a petition for award of attorney fees filed by Defendant Counter–Claimants Association of Community Mental Health/Mental Retardation Programs of West Virginia Benefit Plan Trust (the Trust) and its Trustees. The Court **GRANTS** as moulded the Trust's petition and **DENIES** ABC's motion. The Court further **VACATES** section II.D of its Memorandum Opinion entered November 13, 1998.

## I. FACTUAL BACKGROUND

In a lengthy Memorandum Opinion dated November 13, 1998 the Court granted Defendants' motions for summary judgment and denied Plaintiff's corresponding motion. To summarize, the Court concluded:

1. Plaintiff's counsel misled the Court initially by unjustifiably omitting critical language from a paragraph of the Plan counsel was relying upon in seeking denial of the Trust's subrogation rights;[1]

2. Plaintiff's counsel unjustifiably, and indeed without a legal or factual basis, accused Defendants of fraud and concealment;

3. The Trust was entitled to subrogation in the amount of $9,654 .00, plus interest, subject to any necessary set-off;[2]

4. Plaintiff was not entitled to a statutory penalty under 29 U.S.C. § 1132(c); and

5. Defendants were entitled to attorney fees and costs pursuant to 29 U.S.C. § 1132(g)(1) and *Quesinberry v. Life Insurance Co. of North America,* 987 F.2d 1017 (4th Cir.1993) (en banc).

In response to the Opinion, both ABC and the Trust filed itemized requests for attorney fees. When the briefing on the two requests concluded, the Court examined the filings and ordered further briefing on "the proper allocation of responsibility for the fees to be awarded." Order of Mar. 25, 1999. Specifically, the Court gave notice to Plaintiff's counsel it was considering imposing a fee shifting award against counsel, given certain misstatements and omissions occurring in the case. The matter is now ripe for disposition.

In Devine's response filed during the briefing, the Court was presented with further information concerning her ability to satisfy the award:

Plaintiff is an employee of Shawnee Hills. Her current gross earnings are $884.80 and her current net earnings are $589.43 for 80 hours or two weeks of work. A copy of one of her recent pay stubs is attached as Exhibit A.

In addition, Ms. Devine states that she has incurred significant medical bills for medical care and treatment for herself. Ms. Devine has engaged an attorney to assist her in a divorce matter. She also currently has one son attending college and one who will be entering college after one more year of high school. Thus, Ms. Devine is simply financially unable to pay any large sum for costs, expenses or attorney fees as-

---

**1.** Plaintiff's counsel now concede in their response to Defendants' fee requests that "with all due candor to the Court, Plaintiff and Plaintiff's counsel were obviously mistaken that any ambiguity existed in the exclusionary or subrogation language." Resp. at 10.

**2.** To date, counsel has not advised the Court of any necessary set-off.

sociated with the above referenced matter.

Pl.'s resp. at 2.

## II. DISCUSSION

### A. Entitlement to Fees and Costs

In its November 13 Memorandum Opinion, the Court concluded both ABC and the Trust were entitled to attorney fees pursuant to 29 U.S.C. § 1132(g). In doing so, the Court considered the five applicable factors contained in *Quesinberry v. Life Insurance Co. of North America*, 987 F.2d 1017, 1029 (4th Cir.1993) (en banc):

1. The degree of the opposing party's culpability or bad faith;
2. The ability of the opposing party to satisfy an award of attorney fees;
3. Whether an award of attorney fees against the opposing party would deter other persons acting under similar circumstances;
4. Whether the party requesting attorney fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
5. The relative merits of the parties' positions.

*Id.* at 1029; *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 227 (4th Cir. 1998); *Denzler v. Questech, Inc.*, 80 F.3d 97, 104 (4th Cir.1996); *Wheeler v. Dynamic Engineering, Inc.*, 62 F.3d 634, 641 (4th Cir.1995); *Hussey v. E.I. DuPont De Nemours & Co. Pension & Ben. Plan*, 963 F.Supp. 576, 582 (S.D.W.Va.1997). In applying the factors, this Court observed:

> As stated in *Custer*, "The factors simply constitute the nucleus of an inquiry which seeks to identify that *unusual case* in which the judge may shift fees to further the policies of the statute." *Custer*, 12 F.3d at 422. The test is not a rigid one, but rather a general set of guidelines for the district court to utilize in measuring the propriety of a fee award. *Id. Quesinberry* further stated some of the factors " 'may not be apropos in a given case' " and that " '[i]n particular types of cases, or in any individual case, . . . other considerations may be relevant as well.' " *Id.* (emphasis added) (quoting *Iron Workers Local # 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980)).

*Devine v. American Benefit Corp.*, 27 F.Supp.2d 669, 677 (S.D.W.Va.1998) (emphasis added).

▪ The new information on Ms. Devine's ability to pay, without question, should have been presented to the Court during the initial briefing on attorney fees. Nonetheless, the Court believes the interests of justice now require consideration of this new information in relation to the *Quesinberry* factors.[3]

---

**3.** The Court's prior finding of liability for fees does not prevent it from now reconsidering the award. The Order finding liability was interlocutory in nature. The Court of Appeals for the District of Columbia Circuit recently recognized:

> In keeping with the principle that a finding of liability is not final until the court has specified the relief to be awarded, *every circuit to address the question has held that an order finding liability for attorney's fees is not final until the amount has been determined.* Century 21 Real Estate Corp. v. Century 21 Real Estate, Inc., 929 F.2d 827, 830 (1st Cir.1991); *Echols v. Parker*, 909 F.2d 795, 798 (5th Cir.1990); *Phelps v. Washburn Univ. of Topeka*, 807 F.2d 153, 154 (10th Cir.1986) (per curiam); *Becton Dickinson & Co. v. District 65, United Auto., Aerospace and Agric. Implement Workers of Amer.*, 799 F.2d 57, 61 (3d Cir.1986); *Morgan v. Union Metal Mfg.*, 757 F.2d 792, 795 (6th Cir.1985); *see also Crowley v. Shultz*, 704 F.2d 1269, 1272 (D.C.Cir.1983).

*Gilda Marx, Inc. v. Wildwood Exercise, Inc.*, 85 F.3d 675, 677 (D.C.Cir.1996) (emphasis added); *see also Coble v. Piedmont Farm Credit*, No. 94–2346, 1995 WL 469437, at *1 (4th Cir. Aug.9, 1995).

Being interlocutory in character, the Court's initial finding of liability for fees is subject to reconsideration *sua sponte. Bragg v. Robertson*, 183 F.R.D. 494, 495–96 (S.D.W.Va.1998) ("[T]he Court retains power to amend interlocutory orders to achieve complete justice. 'An interlocutory order is

In its Opinion, but on very limited information from parties, the Court cautioned:

> The second factor *concerns the Court greatly.* According to her lawyer's argument asserting entitlement to fees from the Defendants, Devine is "a simple working woman ... (who) has no ability to satisfy any award of attorneys fees." Pl.'s resp. at 16. The Court accepts that representation. Nonetheless, the Court cannot turn a blind eye to the significant and needless expense occasioned to the Trust, and consequently its participants and beneficiaries, in defending this case. The Court further cannot ignore the apparent lack of any basis for suing ABC in the first place. Nonetheless, the Court will treat this factor as neutral.

*Devine,* 27 F.Supp.2d at 678 (emphasis added).

■ Based on the limited facts appearing in the summary judgment briefing, the Court accepted Plaintiff's counsel's skeletal representation on ability to pay and compared it to the then more obvious burdens occasioned on the Trust and ABC. Now cognizant in detail of the extreme financial hardship an award would work on Ms. Devine and her family, however, the *Quesinberry* calculus plainly favors a denial of fees under section 1132(g). With the new information, this case is not one of those "unusual" actions where fees are warranted under ERISA.

Even were the Court to leave its strong analysis of factors 1 and 3–5 intact, the second factor, the ability of the opposing party to satisfy an award of attorney fees, now overwhelms the analysis. Accordingly, the Court **VACATES** Section II.D of its November 13, 1998 Memorandum Opinion and **DENIES** both the Trust's and ABC's request for attorney fees and costs pursuant to section 1132(g)(1).

Although the Court has vacated its award of fees under section 1132(g), it

subject to reconsideration at any time prior to entry of a final judgment.' ") (quoting *Fayette-*

notes the Trust is yet entitled to recover a portion of its fees under the mandatory provisions of the Plan. The relevant provision reads:

> Should the Plan be required to file or initiate a civil action to enforce its right of subrogation, it shall be entitled to recover all costs associated with such enforcement including, but not limited to, all attorney's fees and expenses incurred by the Plan in *connection with such enforcement.*

Plan at 6 (emphasis added). As the underscored language states, the recovery of fees is limited to fees incurred "in connection with" enforcing the Plan's right of subrogation.

■ The Court requested the Trust to segregate within its fee request the amounts attributable to enforcing its right of subrogation versus time expended on other issues. In response, the Trust's lawyer filed an affidavit reflecting that apparently $10,575.50 was spent by the firm on issues arising from the Plan's subrogation provision. Although liquidated, the Court believes his amount is subject nevertheless to a determination of reasonableness. *Cf. Allen v. United States,* 606 F.2d 432, 435, 436 (1979) (stating "A court abuses its discretion if it allows a fee without carefully considering the factors relevant to fair compensation" and noting a court's "supervisory power to award no more than reasonable compensation.").

### B. Imposition of Sanctions in the form of Attorney Fees

■ The Court has considered imposing sanctions on Plaintiff's counsel in the form of some, or all, of the fees requested by the Trust. The obvious vehicle for these sanctions, *Rule* 11, *Federal Rules of Civil Procedure,* however, does not contemplate an award of attorney fees by the Court acting *sua sponte.* Rule 11(c)(2) provides:

*ville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1469 (4th Cir.1991)).

**(2) Nature of Sanction; Limitations.** A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, *or, if imposed on motion* and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Fed.R.Civ.P. 11(c)(2). Several courts, including our own Court of Appeals, albeit in an unpublished opinion, interpret this subdivision of the Rule to prevent a court from *sua sponte* imposing attorney fees as a sanction against one who contravenes *Rule* 11. *Duggan v. Everd,* No. 95–2242, 1996 WL 145230, at \* 1 (4th Cir. Apr.1, 1996); *Nuwesra v. Merrill Lynch, Fenner Smith, Inc.,* 174 F.3d 87, 88 (2d Cir.1999) (holding the district court "had no authority under Rule 11(c)(1)(B) to award attorneys' fees sua sponte.") (per curiam); *Thornton v. General Motors Corp.,* 136 F.3d 450, 455 (5th Cir.1998) (per curiam); *Johnson v. Waddell & Reed, Inc.,* 74 F.3d 147, 152 n. 3 (7th Cir.1996) (per curiam). Defendants, after ample time to pursue sanctions by motion, have failed to so file. Accordingly, an award of fees pursuant to *Rule* 11 is not a currently available option for the Court.

■ Further, case law and the difficult posture of the case counsel against attempting to impose sanctions pursuant to 28 U.S.C. § 1927 or the Court's inherent powers. These sanctions, in the Court's estimation, would require (1) an evidentiary hearing; (2) an examination of otherwise privileged communications between Devine and her lawyers to gauge responsibility for, and knowledge of, the conduct that occurred in this case from the inception of the subrogation dispute five years

ago to present day; and (3) detailed findings of bad faith. *Chaudhry v. Gallerizzo,* 174 F.3d 394, 411 n. 14 (4th Cir.1999) ("section 1927 also requires 'a finding of counsel's bad faith as a precondition to the imposition of fees.' ") (quoting *Brubaker v. City of Richmond,* 943 F.2d 1363, 1382 n. 25 (4th Cir.1991)); *Strag v. Board of Trustees* 55 F.3d 943, 955 (4th Cir.1995) (observing "the special sanction of attorneys' fees [under the Court's inherent powers] is appropriate in three circumstances: (1) where a party's litigation efforts directly benefit others, (2) where a party has willfully disobeyed a court order, and (3) where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."). Such in-depth collateral development of what is essentially an attorney fee dispute, however, is discouraged. *Trimper v. City of Norfolk,* 58 F.3d 68, 74 (4th Cir.1995) (stating " '[a] request for attorney's fees should not result in a second major litigation.' ") (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

Further, and more importantly, the depth of inquiry would place Devine in a position adverse to her current lawyers and vice-versa. She would, at great further personal cost, be forced to obtain substitute counsel, assuming she would find an attorney willing to enter the mix at this late stage and under these circumstances, to pursue her interests and to avoid a prohibited conflict-of-interest. *See* Resp. to Show Cause Order at 2 (Plaintiff's counsel stating its response brief was filed "to the extent Plaintiff's Counsel can avoid creating a conflict-of-interest."). The Court does not deem these additional burdens to Ms. Devine to be consistent with the interests of justice. Accordingly, the Court will not award sanctions under these circumstances.

In determining a sanctions order would be ineffective, and perhaps further negatively affect Ms. Devine in this instance, the Court nonetheless does not wish to place her in a "Catch–22" situation. The

Court stresses strongly its view that some of the legal and factual positions advanced by Devine's counsel were wholly lacking in merit and, in some cases, appear to have exceeded the reasonable boundaries of acceptable litigation sparring. As aptly stated by the Trust, "[t]his litigation, and its attendant cost, could have and would have been avoided in its entirety had Mrs. Devine been advised to cooperate with the [Trust and ABC.]" Reply at 4. Accordingly, although Devine is now saddled with a fee award pursuant to the Plan, she may thus yet have a claim against her lawyers as a result for amounts she now owes.

### C. Reasonableness of the Fees and Costs Requested

■ In determining the reasonable amount of fees and costs to which the Trust is entitled, the Court is guided by the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). *See, e.g., Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. 1933; *Trimper*, 58 F.3d at 73; *Daly v. Hill*, 790 F.2d 1071, 1077 (4th Cir.1986).[4] These factors are used to initially calculate the reasonable hourly rate and the reasonable number of hours expended by counsel. *Trimper*, 58 F.3d at 73. The resulting product or "lodestar" fee obtained by multiplying these two figures is presumed to be fully compensatory. *Id.* at 73–74.

Trust attorneys John Pollack, Susan Murray and legal assistant Susan Watkins claimed initially a total of 79.5, 9 and 7 hours respectively at respective rates of $150.00, $85.00 and $50.00. This amounts to a total fee request of $13,040.00. As noted *supra*, however, this amount is reduced to $10,575.50 to reflect the hours expended on the compensable subrogation portion of the case. Attorney Pollack also seeks $395.74 in expenses.

While the Court has reviewed equally all of the *Johnson* factors, it appears factors one, two, three and eight are particularly relevant.

■ Concerning the first factor, the time and labor expended, several entries are quite vague, making it difficult to ascertain exactly what transpired during the relevant work periods. By example, there is mention of a number of conferences and documents reviewed that are not further described. This is particularly significant, given the Court's admonition to counsel in its prior Opinion to provide "a reasonable description of the work" performed. *Devine*, 27 F.Supp.2d at 678 n. 14.

The second factor, the novelty and difficulty of the questions presented, poses great difficulty for the Court. Distilled to its essence, the relevant portion of the case dealt with a simple, unambiguous subrogation provision under which the Trust was clearly entitled to relief.[5] Indeed, the Trust itself states in its reply that it had a "clear and unequivocal entitlement to the repayment of the subrogated benefits at issue." Reply at 2. Further, the factual development of the case was straightforward, with a very discrete number of relevant documents and no substantial discovery reflected on the docket sheet. In fact, not a single deposition was taken.

---

**4.** The twelve factors considered by the Court are (1) the time and labor expended; (2) the novelty and difficulty of the questions presented; (3) the skill required properly to perform the legal service; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for like cases; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases. *Trimper*, 58 F.3d at 73; *Daly*, 790 F.2d at 1075 n. 2.

**5.** The most challenging legal issue in the case involved a discussion of the split of authority amongst the circuits on the "de facto" administrator theory, an issue not briefed by either party, but one that was raised by the Court *sua sponte*. *Devine*, 27 F.Supp.2d at 677 n. 10.

The third factor is related to the second. The skill required to perform properly the legal services was not great. Again, this action involved the application of simple facts to simple law. The work expended on the case exceeded what was reasonably necessary. In some cases, it may very well have been duplicative but it is difficult to tell given the vagueness of some of the time entries.

The eighth factor is of paramount importance, the amount in controversy and the results obtained. *Brodziak v. Runyon,* 145 F.3d 194, 196 (4th Cir.1998). It is also very straightforward. The Trust prevailed completely on its simple claim and was awarded $9,654.00 plus interest.

Devine does not challenge the requested hourly rates and the Court finds the same reasonable. After considering all twelve applicable factors, however, the Court cannot make a similar finding for the hours requested.

Based on the Court's line-by-line consideration of the fee requests, its supervisory vantage point since the case's inception and consideration of all of the applicable factors and reasonableness generally, the following reductions are **ORDERED:**

|  | Requested | Awarded | Hourly Rate | Lodestar |
|---|---|---|---|---|
| John Pollack | 79.50 | 18.0 | $150.00 | $2,700.00 |
| Susan Murray | 9.00 | 3.0 | $ 85.00 | $ 255.00 |
| Susan Watkins | 7.00 | 6.0 | $ 50.00 | $ 300.00 |
| TOTAL FEES |  |  |  | $3,255.00 |
| TOTAL COSTS |  |  |  | $ 395.74 |
| TOTAL AWARD |  |  |  | $3,650.74 |

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS** as moulded the Trust's petition and **DENIES** ABC's motion. The Trust is **AWARDED** $3,650.74 in fees and costs. The Court further **VACATES** section II.D of its Memorandum Opinion entered November 13, 1998.[6]

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record. Further, counsel for the Plaintiff is directed to provide her with a copy of the Opinion as well.

---

**6.** One further issue bears observation before final dismissal. In its prior Memorandum Opinion, the Court stated as follows:

> Section 1132(g)(1) provides "(1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." *Id. Devine does not dispute*

that Defendants all fall within the definition of "fiduciary," § 29 U.S.C. 1002(21).
*Devine,* 27 F.Supp.2d at 677 n. 11 (emphasis added). The Court observes Devine might have disputed the issue, considering the arguable dicta in *HealthSouth Rehabilitation Hospital v. American National Red Cross,* 101 F.3d 1005, 1009 (4th Cir.1996), concerning the fiduciary status of a third party administrator. The issue, of course, is now moot.