**FIRST PENN–PACIFIC LIFE INSURANCE COMPANY, Plaintiff,**

v.

**WILLIAM R. EVANS, CHARTERED, Defendant.**

No. Civ H–01–680.

United States District Court, D. Maryland.

June 19, 2001.

---

Jefferson L. Blomquist and Funk & Bolton, P.A., Baltimore, MD, for plaintiff.

Lee H. Ogburn, Kramon and Graham, Baltimore, MD, for William R. Evans.

Thomas C. Dame, Gallagher, Evelius & Jones, LLP, Baltimore, MD, for intervening defendant Maryland First Financial.

*MEMORANDUM AND ORDER*

ALEXANDER HARVEY, II, Senior District Judge.

In this civil action, plaintiff First Penn–Pacific Life Insurance Company ("First Penn–Pacific") has here sued defendant William R. Evans, Chartered ("Evans"), seeking rescission of a life insurance policy (the "Policy").[1] First Penn–Pacific issued the Policy to Stanley R. Moore ("Moore") on January 5,

---

1. First Penn–Pacific Policy No. T101158758.

1998, and some two months later Moore assigned the Policy to Evans.[2]

Count I of the complaint alleges that Moore fraudulently misrepresented material facts in applying for the Policy and that defendant is liable for these misrepresentations as assignee of the Policy. Count II asserts that the Policy is invalid because neither Moore nor defendant purchased the Policy for the purpose of protecting a legally insurable interest. First Penn–Pacific has asked this Court to enter an Order rescinding the Policy and declaring it void *ab initio*.[3]

Presently pending before the Court is a motion to intervene filed by Maryland First Financial Services Corp. ("Maryland First Financial" or "Intervenor"). Memoranda and exhibits have been submitted by Maryland First Financial and by plaintiff in support of and in opposition to the pending motion.[4] Both defendant Evans and Intervenor Maryland First Financial have filed answers to the complaint.

Following its review of the pleadings, memoranda and exhibits, the Court has determined that no hearing is necessary for a decision on the pending motion. *See* Local Rule 105.6. For the reasons stated herein, the motion to intervene of Maryland First Financial will be granted.

I

*Background Facts*

Plaintiff First Penn–Pacific is an Indiana corporation with its principal place of business in Illinois. Intervenor Maryland First Financial has previously been appointed by the Circuit Court for Baltimore City to be the Receiver of Answer Care, Inc. ("Answer Care"), a Maryland corporation. *Lubin v. Answer Care, Inc.*, Case No. 24–C–00–004710 (Cir.Ct. for Balto. City).

Answer Care has been engaged in the business of promoting and consummating "viatical settlements." This particular process involves the solicitation of potential investors to purchase interests in life insurance policies previously issued to individuals (known as "viators") who, after having been issued policies, were later diagnosed as having a terminal illness. Answer Care operated a network of brokers and companies which would direct viators to it. Arrangements would then be made whereby the viators would sell their life insurance policies to the investors whom Answer Care had solicited. The investors would buy the viator's policy for less than its "face amount" or "death benefit," that being the amount that the life insurance company was obligated to pay to the beneficiary of the policy upon the viator's death. After the policy had been sold, the investors were required to pay scheduled premiums until the viator died, whereupon the insurance company would be obligated to pay the death benefit to the investors. The investors' profit would be the amount of the death benefit minus the discounted price paid to the viator, minus the total amount of premiums paid to the insurance company, and minus any other administrative or transaction costs.

Defendant Evans has served as escrow agent for Answer Care and has owned bank accounts which held the funds of Answer Care investors. Evans has also been the owner of the life insurance polices which were purchased by the investors. According to the complaint, Evans received correspondence and reimbursement checks whenever a life insurance company canceled a policy which had been sold to Answer Care investors.

In November of 1997, Moore completed and submitted to First–Penn Pacific a written application seeking the issuance to him of a life insurance policy. His sister was to be the beneficiary. Moore requested issuance of a policy with a $2 million face amount under preferred premium rates. In December of 1997, Moore was interviewed in connection with his application. On January 5,

---

**2.** Evans is incorporated under the laws of the State of Maryland and has its principal place of business in Dundalk, Maryland.

**3.** Diversity jurisdiction is alleged to exist under 28 U.S.C. § 1332.

**4.** Defendant Evans has not filed an opposition to the pending motion.

1998, First Penn–Pacific issued to Moore a $2 million face amount policy under standard rather than preferred premium rates, inasmuch as Moore had an elevated cholesterol level and three recent automobile moving violations. Since Moore had not requested standard premium rates, he was asked to sign an "Amendment of Application" signifying his acceptance of the change from preferred to standard premium rates. On January 27, 1998, Moore accepted the Policy by signing the Amendment of Application, acknowledging, *inter alia,* that the "representations made in the application are still valid as of the date of this amendment."

Some two months after the Policy was issued, Moore submitted to First Penn–Pacific a "Client Service Request" form which changed the beneficiary of the Policy from Moore's sister to Evans. In addition, Moore assigned his "rights, titles, interests and incidents of ownership in the [Policy]" to Evans. Upon receipt of the Request form, First Penn–Pacific commenced an investigation into the circumstances surrounding the issuance of the Policy to Moore.

According to the complaint, Moore made fraudulent and material misrepresentations both in his application and during the interview conducted in connection with his application. First Penn–Pacific alleges that Moore lied about his family circumstances, his health and the amount of other life insurance which he owned. It is claimed that Moore represented that he did not have AIDS or HIV, even though First Penn–Pacific's investigation of Moore's medical records revealed that he had refused to be tested for HIV or AIDS. It is also asserted in the complaint that between November 1997 and January 27, 1998, Moore applied for and/or obtained $4 million of life insurance from other insurers, even though Moore's application and his interview indicated that he had only a $500,000 term life insurance policy with a company known as "Transoccidental." First Penn–Pacific maintains that it would not have issued the Policy to Moore if it had

known about this other life insurance coverage.

Plaintiff First Penn–Pacific contends that defendant Evans, as Moore's assignee, is bound by Moore's misrepresentations and that Evans "knew or should have known that ... Moore was terminally ill." It is alleged that defendant Evans, in its capacity as escrow agent for Answer Care, "had no reason to obtain and become the beneficiary of ... Moore's policy unless he was terminally ill." Plaintiff further claims that Moore, in obtaining the Policy, never intended to provide a death benefit to his estate or to his sister, the original beneficiary. According to plaintiff, Moore's initial premium payment for the Policy "ultimately emanat[ed] from Answer Care investors."

On October 12, 1999, plaintiff First Penn–Pacific sent to defendant Evans a letter stating that the Policy was being rescinded. To effectuate this rescission, a refund check was included, made payable to defendant Evans as reimbursement for all premiums paid to the date of the rescission. When defendant did not cash this refund check, plaintiff filed this civil action seeking a declaration that the Policy was void *ab initio* and that the Policy has been rescinded.

Presently pending in the Circuit Court for Baltimore City (the "Circuit Court") is an action brought by the Securities Commissioner for the State of Maryland (the "Commissioner") against Answer Care and Mark Massoni ("Massoni"), its owner and President.[5] *Inter alia,* the Commissioner's complaint alleges: (1) that Answer Care and Massoni offered and sold securities in violation of the Maryland Securities Act;[6] (2) that Answer Care committed fraud by selling interests in life insurance policies that were obtained by means of fraudulent applications and were then subsequently canceled by the insurance companies because of this fraud; and (3) that Answer Care did not have an independent escrow agent to manage the policies which were sold to investors. The Commissioner sought in the Circuit Court a permanent injunction, the appointment of a receiver,

---

5. The record does not indicate exactly when this action was filed, but it appears to have been instituted during the summer of 2000.

6. Md.Code Ann., Corps. & Ass'ns, § 11–101 *et seq.*

restitution, civil monetary penalties and other relief.

On September 25, 2000, the Circuit Court entered a Consent Order which froze Answer Care's assets and enjoined Answer Care and Massoni from offering or selling interests in life insurance polices. On October 16, 2000, the Circuit Court appointed Maryland First Financial as the Receiver for Answer Care. At the same time, that Court entered a preliminary injunction against Answer Care and Massoni in order to prevent the risk of further loss of investor funds, to protect the public interest and to avoid any harm which would result from a continuing violation of the Maryland Securities Act.

The Circuit Court Order directed Maryland First Financial to control, manage and account for the assets and businesses of Answer Care for the purpose of consolidating, liquidating, protecting and distributing assets. Specifically, Maryland First Financial was authorized to recover assets for the benefit of investors by, *inter alia*, filing claims against those who have received preferential treatment, those who may be Answer Care insiders, and those who have received investor funds in an illegitimate manner.

On May 17, 2001, the Circuit Court entered an Order addressing questions pertaining to the beneficial ownership of certain life insurance policies and related funds at issue in the litigation. The Court appointed *amicus* counsel to represent the interests of Answer Care investors, and counsel was directed to advocate, *inter alia*, that the beneficial ownership of each life insurance policy, as well as any refunded premium payments for each canceled policy, should be apportioned among the specific investors who had been promised a share of the death benefits for such policies. In its capacity as Receiver for Answer Care, Maryland First Financial here argues that the Policy's death benefits and/or refunded premium payments should be made available for the benefit of all creditors of Answer Care and for the payment of expenses associated with the administration of Answer Care's estate.

## II
### Applicable Principles of Law

Rule 24, F.R.Civ.P., permits "anyone" to intervene in an action upon timely application. The Rule distinguishes between intervention as of right pursuant to Rule 24(a), and permissive intervention pursuant to Rule 24(b). Rule 24(a)(2) states as follows:

> Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The Fourth Circuit has explained that an intervenor must under Rule 24(a)(2) satisfy four requirements: (1) the intervenor must submit a timely motion; (2) it must demonstrate a "direct and substantial interest" in the property or transaction; (3) it has to prove that the interest would be impaired if the intervention was not allowed; and (4) it must establish that the interest is inadequately represented by existing parties. *In re Richman*, 104 F.3d 654, 659 (4th Cir.1997) (quoting *In re Kaiser Steel Corp.*, 998 F.2d 783, 790 (10th Cir.1993)); *see also In re Thompson*, 965 F.2d 1136, 1142 (1st Cir. 1992). "[A] would-be intervenor bears the burden of demonstrating to the court a right to intervene." *In re Richman*, 104 F.3d at 658 (citing *In re Kaiser Steel Corp.*, 998 F.2d at 790). An application to intervene should be viewed on the pleadings, and in considering whether a party should intervene in a case, a court should not be concerned with whether the applicant is likely to prevail on the merits. *Williams & Humbert Ltd. v. W. & H. Trade Marks Ltd.*, 840 F.2d 72, 75 (D.C.Cir.1988)

With respect to the fourth requirement, the Fourth Circuit has indicated that an intervenor's burden of showing inadequacy of representation is "minimal." *Commonwealth of Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir.1976) (citing

*Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1971)). However, when the moving party has the same ultimate objective as a party to the suit, then a presumption arises that the moving party's interests are adequately represented. *Westinghouse Elec. Corp.,* 542 F.2d at 216. Indeed, when the existing party has a legal obligation to represent the interests of the intervenor, then the intervenor has the "onerous" burden of making a *"compelling showing* of inadequate representation." *See In re Richman,* 104 F.3d at 660 (quoting *In re Thompson,* 965 F.2d at 1142) (emphasis in original). To rebut the presumption of adequate representation, the moving party "must demonstrate adversity of interest, collusion, or nonfeasance." *Id.; see also Bragg v. Robertson,* 183 F.R.D. 494, 496 (S.D.W.Va. 1998).

Unlike intervention as of right under Rule 24(a)(2), which, as noted, requires a movant to establish four separate elements, permissive intervention under Rule 24(b)(2) gives the court discretion to grant intervention based upon "timely application ... when an applicant's claim or defense and the main action have a question of law or fact in common." Rule 24(b)(2). "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.*

### III

#### *Discussion*

Maryland First Financial seeks intervention both as of right under Rule 24(a)(2) and permissively under Rule 24(b)(2). It is argued that upon Moore's death, plaintiff First Penn–Pacific is obligated to pay defendant Evans the death benefit for the Policy, and that in turn Evans is obligated to transfer these proceeds to Answer Care and its investors. As Answer.Care's Receiver, Maryland First Financial claims that it has "an interest relating to the property ... which is the subject of the action." *See* Rule 24(a)(2). Even if Evans is not legally obligated to transfer the death benefits to Maryland First Financial, it is claimed that Intervenor will retain a beneficial interest in the Policy since, as Receiver, it represents the interests of all the creditors of Answer Care with respect to the collection of Answer Care's assets for distribution. It is also contended that defendant Evans will not adequately represent Answer Care's interests.

Maryland First Financial also seeks permissive intervention pursuant to Rule 24(b)(2) on the ground that its claim or defense and this action have a question of law or fact in common. *See* Rule 24(b)(2). Maryland First Financial asserts that it holds the "real interest" in preserving the Policy and that its defenses and the facts upon which they rely are identical to those presented by defendant Evans. According to Maryland First Financial, its intervention will not unduly delay or prejudice the adjudication of the rights of the original parties because it is seeking to intervene at the very outset of the case. It is claimed that plaintiff First Penn–Pacific did not name Intervenor as a defendant even though plaintiff was aware of Intervenor's interest in this action before it was commenced.

In opposing the pending motion to intervene, plaintiff First Penn–Pacific argues that Maryland First Financial has not presented adequate allegations of fact to support its claim that it has an interest in the subject matter of this action as required by Rule 24(a)(2). Plaintiff points out that defendant Evans is the legal owner of the Policy and that the bank accounts which held investors' funds were in Evans' name. Plaintiff maintains that Answer Care was merely the facilitator of transactions between investors and viators, and that Answer Care therefore never owned or held any life insurance policies and never intended to do so.

Relying on *In re Richman,* 104 F.3d at 660, plaintiff also argues that Intervenor cannot meet its burden of demonstrating that its interests will not be adequately represented by defendant Evans.

With respect to the issue of permissive intervention under Rule 24(b)(2), plaintiff contends that Intervenor does not have a claim or defense in common with a question of law or fact in the main action for the same reasons that Intervenor does not have an interest in the action under Rule 24(a)(2). Finally, plaintiff suggests that if this Court is inclined to allow permissive intervention, then such intervention should be for the lim-

ited purpose of allowing the parties to conduct discovery directed towards the question of the Intervenor's actual interest, if any, in the Policy.

■ On the record here, this Court concludes that although Maryland First Financial has not met its burden of showing that it should be permitted to intervene as of right pursuant to Rule 24(a)(2), it has met the requirements for permissive intervention under Rule 24(b)(2). Accordingly, this Court will exercise the discretion conferred upon it under Rule 24(b)(2) and grant the pending motion to intervene of Maryland First Financial.

Maryland First Financial has here satisfied the first three requirements of *In re Richman* for being permitted to intervene as of right. First, it is not disputed that the pending motion to intervene is timely. Second, Maryland First Financial has alleged that it has an interest in the Policy. Third, it has also been alleged that the ability of Maryland First Financial to protect such interest may be impaired by the disposition of this lawsuit in the manner sought by the plaintiff, which is asking this Court to rescind the Policy and declare it void *ab initio*.

The Court further concludes, however, that the Intervenor has not satisfactorily established by its submissions that its interests will not be adequately represented by existing parties. There is here a presumption of adequate representation by defendant Evans which has the same ultimate objective as Intervenor and has a legal obligation to represent the would-be Intervenor's interest. *In re Richman*, 104 F.3d at 660. This presumption must be overcome by allegations and compelling evidence of inadequate representation. *Id.* On the record here, this Court concludes that Maryland First Financial has not met this onerous burden. In an affidavit submitted in support of the pending motion, the Executive Vice President of Maryland First Financial asserts that the Receiver's preliminary investigation reveals that Evans "may have failed" to protect the interests of investor creditors of Answer Care and "may have collected" an excessive fee. In the absence of development of the relevant facts by way of discovery, the Court is not prepared to now resolve these questions and determine at this early stage of the case that the inter-

ests of Evans are adverse to those of the Receiver.

■ Maryland First Financial is here also seeking permissive intervention pursuant to Rule 24(b)(2). From its review of the record here, the Court has concluded that Intervenor's motion should be granted under Rule 24(b)(2) because the claims and defenses of Maryland First Financial have "question[s] of law or fact in common" with those of this action, and because the involvement of Maryland First Financial in this case will not cause undue delay or prejudice.

As mentioned hereinabove, Intervenor, as Receiver for Answer Care, has the same interests in the Policy at issue as defendant Evans, the assignee of the Policy and the escrow agent for Answer Care. If the Court grants the relief sought in this case by the plaintiff, then Maryland First Financial, as the Receiver of Answer Care, will be deprived of a substantial sum claimed to be an asset of the estate. As the court-appointed Receiver, Maryland First Financial represents the interests of all of the investors. Intervenor's defenses relating to the validity of the Policy and its subsequent assignment will be based upon the same set of facts and circumstances which exist as a result of plaintiff's complaint and the answer filed by defendant Evans. Furthermore, plaintiff has made no claim of prejudice, and there has been no undue delay because the pending motion to intervene was filed early in this litigation. Accordingly, this Court will exercise the discretion conferred upon it by Rule 24(b)(2) and grant the permissive intervention of Maryland First Financial.

Plaintiff has argued in the alternative that if this Court allows Maryland First Financial to intervene in this action, such intervention should be only for the limited purpose of conducting discovery to determine the Intervenor's interest in the Policy and whether its claim or defense presents questions of law or fact in common with those of this action. No such limitation will be imposed by the Court. Rather, Maryland First Financial will now be permitted to intervene as a second defendant. There is no need at this stage of the case for the Court to make determinations of fact regarding the merits of the issues in dispute. Only the pleadings should be viewed by the Court in deciding whether the

pending motion to intervene should be granted. *Williams & Humbert Ltd.,* 840 F.2d at 75.

## IV

### *Conclusion*

For the reasons stated herein, the motion to intervene of Maryland First Financial will be granted pursuant to Rule 24(b)(2). Accordingly, it is this ____ day of June, 2001 by the United States District Court for the District of Maryland,

ORDERED:

(1) That the motion to intervene of Maryland First Financial Services Corp., as Receiver for Answer Care, Inc., is hereby granted;

(2) That Maryland First Financial Services Corp. is hereby permitted to intervene as a defendant in this case; and

(3) That the answer of Maryland First Financial Services Corp. is hereby accepted as a properly filed pleading in this case.